1  HAEGGQUIST LAW GROUP
   ALREEN HAEGGQUIST (221858)
2  501 West Broadway, Suite A-276
   San Diego, CA 92101
3  Telephone: 619/955-8218
   Facsimile: 619/342-7878
4  alreen@haeggquistlaw.com

5

   LAW OFFICE OF HELEN ZELDES
6  HELEN I. ZELDES (220051)
   249 S. Highway 101, #370
7  Solana Beach, CA 92075
   Telephone: 858/523-1713
8  Facsimile: 858/523-1783
   helenz@zeldeslaw.com

9

10

11  Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEHRI & SKALET, PLLC
STEVEN A. SKALET
CRAIG L. BRISKIN
1250 Connecticut Ave. NW, Suite 300
Washington, DC 20036
Telephone: 202/822-5100
Facsimile: 202/822-4997
sskalet@findjustice.com
cbriskin@findjustice.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACIE SOMERS, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE, INC., a California Corporation,<br><br>Defendant. | Case No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF SHERMAN ANTITRUST ACT, CARTWRIGHT ACT, CALIFORNIA UNFAIR COMPETITION LAW, CONSUMER LEGAL REMEDIES ACT AND MONOPOLIZATION OF BUSINESS PRACTICES<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION AND MARKET DEFINITIONS

1.    Plaintiff Stacie Somers, on her own behalf and behalf of the classes defined herein (the "Classes"), based on information and belief and investigation of counsel, except for information pertaining to the named Plaintiff, which is based on her personal knowledge, alleges as follows:

2.    Apple, Inc. ("Apple" or "Defendant") owns and operates iTunes Music Store ("Music Store"), an Internet site that offers digital music and digital video computer files for online purchase and download ("Online Music" and "Online Video"). Unlike most Internet sites, Music Store is accessed with proprietary Apple software, rather than with a Web browser. Apple designs the hardware and software of its iPod Digital Music Player, while manufacturing is outsourced to Asia.

3.    The "Online Music market" is defined as the market for digital music delivered to the consumer by way of Internet download. Online Music presents consumers enormous advantages over purchasing music in CD form at retail stores. Online Music stores offer for sale hundreds of thousands of songs at once, many times more than even the largest traditional music retailer. Online Music is attractive to consumers because it allows them to purchase a la carte only the songs that they want, rather than having to buy an entire CD album in order to get only one or two desirable songs.

4.    Online Music is also attractive because it is more convenient, reliable, and better for the environment. Consumers do not have to drive to a store to make their purchase, trucks do not have to transport the CDs from factory to warehouse to retailer, and there is no material or packaging produced only to be thrown away. Online Music also promises superior audio fidelity over time, because unlike CDs, Online Music lasts indefinitely and cannot wear out or break.

5.    Apple has approximately an 83% market share of the Online Music market.

6.    The "Online Video market" is defined as the market for digital video files that are purchased and downloaded via the Internet, and can be viewed both on a home computer and a video-enabled Digital Music Player. Popular examples of Online Video include commercial-free television shows, music videos, and short films. Just as with Online Music, the variety, reliability, convenience, and environmental friendliness of Online Video make it superior to DVDs purchased from traditional retail outlets.

COMPLAINT

7.     Apple's share of the Online Video market is at least 75%.

8.     The "Digital Music Player market" is defined as the market for portable battery-powered devices that can store and play large numbers of digital music computer files.  For technology-savvy consumers, Digital Music Players are enormous improvements over portable CD players.  While a traditional CD can hold no more than 15 to 25 songs, Digital Music Players, by playing music that has been compressed into small digital files, can store from 150 to more than 20,000 songs.  Even larger Digital Music Players are now typically only a fraction of the size of a typical portable CD player, and by having few moving parts, are more reliable and offer a much longer battery life.  Digital Music Players also dispense with the need to carry around CDs, and allow consumers to organize, categorize, and play their music in whatever manner or order they desire.  Further advantages include superior skip protection, and models can play video games and files, and store digital photographs.

9.     There are two major segments of the Digital Music Player market:  those that store music files on miniature hard drives, and those that store music using flash memory.  Apple's iPod line of Digital Music Players has more than a 90% market share of the hard drive-based player market, by far the larger of the two segments over the Class Period (as defined herein in the Class Action Allegations section), and approximately a 70% share of the flash memory-based segment of the market.

10.    The three relevant product markets are the markets for Online Video, Online Music, and Digital Music Players, as defined above, or collectively "the digital music markets."

11.    The relevant geographic market for all three product markets is the United States.

12.    Apple has engaged in tying and monopolizing behavior, placing unneeded and unjustifiable technological restrictions on its most popular products in an effort to restrict consumer choice, and to restrain what little remains of its competition in the digital music markets.  Apple's CEO Steve Jobs has himself compared Apple's digital music dominance to Microsoft's personal computer operating system dominance, calling Apple's Music Store "the Microsoft of music stores" in a meeting with financial analysts.

13.     Apple has repeatedly acted to foreclose even the possibility of competition by using its market power to force consumers to choose its products based not on their merits, but on the fact that technological restrictions and incompatibilities prevent them from buying its competitors' products.

14.     Apple deliberately makes digital music purchased at the Music Store inoperable with its competitors' Digital Music Players. Thus, in order to play music from Apple's Music Store, the dominant Online Music retailer, the consumer's only option in the Digital Music Player market is Apple's iPod. Given that other companies' products cannot even begin to compete for the business of most consumers, Apple can and does sell the iPod at prices far above those that would prevail in a competitive market.

15.     Conversely, Apple also makes the iPod unable to play music sold at its rivals' Online Music stores. Consumers who have iPods can play only the Online Music they purchase from Apple's Music Store, allowing Apple to further entrench its nearly complete monopoly in both of these markets.

16.     In the past year, as improved hard drive and video compression technology have made it possible to play video content such as television shows on Digital Music Players, Apple has begun using these same illegal tactics to block consumers from purchasing and playing Online Video from its rivals' online stores and video-enabled Digital Music Players.

## PARTIES

17.     Defendant Apple, Inc. is a corporation organized under the laws of the State of California and has its principal place of business in Cupertino, California. Though best known as a computer hardware and software company, the majority of Apple's revenues and profits now derive from its Online Video, Online Music, and Digital Music Player businesses.

18.     Plaintiff Stacie Somers resides in San Diego County, California. On or about November 2005, while in San Diego County, Ms. Somers purchased a 30GB iPod from Target.

## PLAINTIFF'S ALLEGATIONS

19.     Beginning on or around December 2005, and periodically throughout the Class Period, Ms. Somers purchased music from the iTunes Music Store, and downloaded it from the

COMPLAINT                                                                                    - 3 -

1  Music Store to her personal computer. Ms. Somers then selected and uploaded the purchased music

2  from her personal computer to her iPod.

3       20.    Ms. Somers downloaded the songs she purchased from the Music Store and utilized

4  her iPod in accordance with the instructions provided in the packaging and on the iTunes Music

5  Store website.

6                          **JURISDICTION AND VENUE**

7       21.    Jurisdiction is conferred upon this judicial district pursuant to 15 U.S.C. §§ 15 and 26,

8  and 28 U.S.C. §§ 1331 and 1337. The Court has supplemental jurisdiction over Plaintiff's state law

9  claims pursuant to 28 U.S.C. § 1367(a).

10       22.    This Court has original jurisdiction over this action under the Class Action Fairness

11  Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"), as to the named Plaintiff and every member of the

12  class, because the proposed class contains more than 100 members, the aggregate amount in

13  controversy exceeds $5 million, and members of the class reside across the United States, and are

14  therefore diverse from Defendant.

15       23.    Venue is proper in this district pursuant to 15 U.S.C. §§ 15, 22 and 26, and 28 U.S.C.

16  §1391 because Defendant transacts business in this district, Defendant has its principle corporate

17  office in this district, and because thousands of Class members are located in this district.

18  Additionally, a substantial part of the interstate trade and commerce involved and affected by the

19  alleged violations of the antitrust laws was and is carried on in this district. The acts complained of

20  have had, and will have, substantial anti-competitive effects in this district. A substantial number of

21  putative plaintiffs reside in this district. Finally, one other case is pending in this district concerning

22  the subject matter alleged herein.

23       24.    This Court has personal jurisdiction over Apple, because Apple's corporate

24  headquarters are located in Cupertino, California, it is authorized to conduct business in California,

25  and it has intentionally availed itself of the laws and markets of California through the promotion,

26  marketing, distribution and sale of its Digital Music Players, Online Music, and Online Video in

27  California. In addition, Defendant is headquartered in Santa Clara County, which is assigned to this

28

Division of the Court.  Plaintiff is filing concurrently herewith an affidavit stating facts showing that this action has been commenced in a proper county pursuant to California Civil Code § 1780(c).

## INTRADISTRICT ASSIGNMENT

25.    Assignment to the San Jose Division is proper because a substantial portion of the acts, events, and omissions giving rise to this action occurred in Santa Clara, which is within the purview of the San Jose Division of this District.

## TRADE AND COMMERCE

26.    During the Class Period, Apple marketed, distributed, and sold Digital Music Players, Online Music, and Online Video in a continuous and uninterrupted flow of intrastate and interstate commerce throughout the United States.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action on behalf of herself, and all others similarly situated, pursuant to Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure.  Plaintiff seeks to represent the following Classes:

> **(a)    Injunctive Relief Class (for injunctive relief under the Clayton Act, 15 U.S.C. §26):**  All persons or entities in the United States (excluding federal, state and local governmental entities, Apple, its directors, officers and members of their families), that, during the Class Period, purchased an Apple iPod, or who purchased audio or video content from Apple's Music Store, from December 31, 2003 through the conclusion of the trial of this matter.

1        **(b) Indirect Purchaser Damages Class (for damages under the Cartwright**

2               **Act, Cal. Bus. & Prof. Code §16720):** All persons or entities in the United

3               States (excluding federal, state and local governmental entities, Apple, its

4               directors, officers and members of their families) that during the Class Period

5               purchased an Apple iPod indirectly from Apple or video content from Apple's

6               Music Store from December 31, 2003 through the conclusion of the trial of

7               this matter.

8        28.     The Classes are so numerous that joinder of all members is impractical. There are

9 thousands of members in each Class who are geographically dispersed throughout the United States.

10        29.     Plaintiff's claims are typical of the claims of the members of the Classes because

11 Plaintiff and all Class members were damaged by the same wrongful conduct of the Defendant

12 alleged herein.

13        30.     There are questions of law and fact common to the Classes which predominate over

14 any questions affecting only individual Class members. Such common questions include:

15           (a)     the definition of the relevant markets;

16           (b)     Apple's market power within these markets;

17           (c)     whether Apple monopolized and continues to monopolize the relevant

18 markets;

19           (d)     whether Apple attempted to monopolize and continues to attempt to

20 monopolize the relevant markets;

21           (e)     whether the contractual conditions Apple imposes upon its customers are

22 unconscionable;

23           (f)     whether Apple's conduct caused damage to the Plaintiff and members of the

24 Classes, including the degree to which prices paid by the Classes are higher than the prices that

25 would be paid in a market free from tying, monopolization, and other illegal conduct; and

26           (g)     the appropriateness of injunctive relief to restrain ongoing and future

27 violations of the law.

28

31.    The claims of the Plaintiff are typical of the claims of the Classes, and Plaintiff has no interest adverse to the interest of other members of the Classes.

32.    Plaintiff will fairly and adequately protect the interests of the Classes, and has retained counsel experienced and competent in the prosecution of complex class actions and antitrust litigation.

33.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who could not afford on their own to individually litigate an antitrust claim against a large corporate defendant. There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of the controversy.

**APPLE ENGAGES IN ILLEGAL TYING CONDUCT**

34.    Online Music comes in both unprotected and protected digital file formats.  Unlike unprotected formats, protected formats include technological encumbrances designed to prevent consumers from making illegal unauthorized copies of the digital file.

35.    Given the increasing problem of music piracy, the major record companies that control the copyrights to most popular music are generally unwilling to license their music for online sale except in protected formats.

36.    The protected music file format used by most Online Music stores is the WMA format.  Online Music stores that sell their protected music files in WMA format include America Online, Wal-Mart, Napster, MusicMatch, Best Buy, Yahoo! Music, FYE Download Zone, and Virgin Digital.

37.    Apple's iPod is alone among mass-market Digital Music Players in not supporting the WMA format.

COMPLAINT

1    38.    There are no technological limitations preventing the iPod from supporting WMA

2    playback. Apple outsources most of the production of the iPod to third-party manufacturers in Asia.

3    One third-party part used in the iPod is its "core processor," the Portal Player System-On-A-Chip.

4    The System-On-A-Chip by default supports the WMA format.  Apple, however, deliberately

5    designed the iPod's software so that it would only play a single protected digital format, Apple's

6    FairPlay-modified AAC format. Deliberately disabling a desirable feature of a computer product is

7    known as "crippling" a product, and software that does this is known as "crippleware."

8    39.    The software Apple has designed for the iPod, which disables the iPod's inherent

9    ability to play WMA format files, is a classic example of crippleware. By preventing the iPod from

10    playing WMA or any other protected music format besides FairPlay-modified AAC format, iPod

11    owners' only option to purchase Online Music is to purchase from Apple's Music Store.  This

12    conduct constitutes an illegal tie in violation of antitrust laws.

13    40.    In place of the Portal Player System-On-A-Chip, Apple uses the SigmaTel

14    STMP3550 in its low-end iPod Shuffles. Like the Portal Player System-On-A-Chip, the SigmaTel

15    STMP3550 was designed to decode and play WMA files and does indeed play them on every Digital

16    Music Player that contains the STMP3550 chip except the iPod.  As in its higher end models,

17    Apple's crippleware operating system software prevents the iPod Shuffle from playing WMA files.

18    41.    The cost to Apple of licensing the WMA format would likely not exceed $800,000

19    per year, or approximately three cents per iPod sold in 2005.

20    42.    Just as Apple deliberately makes the iPod incapable of playing any Online Music not

21    purchased on Music Store, it makes the FairPlay-modified AAC music files purchased on Music

22    Store incapable of being played by other Digital Music Players.  Thus, consumers who have

23    purchased Online Music from Apple to play on their home computers will have no choice but to buy

24    an iPod if they want to play their music on a Digital Music Player.

25    43.    Other consumers first buy an iPod and later buy Online Music for their iPod from

26    Apple's Music Store. As described above, such consumers are not able to purchase Online Music

27    for play on an iPod from any company besides Apple. After purchasing their digital music library

28    from Apple, these consumers are locked into making all future Digital Music Player purchases from

COMPLAINT                                                                                              - 8 -

Apple. They might want to buy a non-Apple Digital Music Player for a family member, or to replace their original Apple iPod, but to do so would mean they could not utilize any of the songs they purchased from Apple in their new music player.

44. Defendant's refusal to allow its FairPlay-modified AAC music files to be played on any Digital Music Player besides the Apple iPod constitutes an illegal tie in violation of antitrust laws.

45. These ongoing injuries can be halted and abated by an injunction that would compel Apple to make iPod compatible with Online Music and Online Video purchased on stores other than Music Store, and to allow competitors to sell their music and video content using Apple's iTunes platform.

46. Apple has acted on grounds generally applicable to the Injunctive Relief Class, thereby making final injunctive relief appropriate with respect to the Class as a whole. Such an injunction would be of immense benefit to the Plaintiff, the Class, and the general public while imposing only a trifling burden upon Apple.

**IN EUROPE APPLE'S MONOPOLY PRICING AND TYING CONDUCT HAS BEEN THE TARGET OF FORMAL GOVERNMENT INVESTIGATIONS, PRIVATE LAWSUITS, AND LEGISLATION SPECIFICALLY DESIGNED TO COUNTER APPLE'S ANTI-COMPETITIVE CONDUCT**

47. European antitrust authorities are currently investigating Apple's pricing practices in the European Union. Leveraging its worldwide monopoly power in the Online Music market, Apple has set the price of music downloads in the United Kingdom substantially higher than in the United States and in countries that use the Euro as their currency, and maintains this higher price by placing technological restrictions on residents of the United Kingdom from purchasing music from Apple's non-UK Music Store sites.

48. In France, a consumer rights organization has filed suit against Apple for deliberately making the iPod and Online Music purchased from Music Store incompatible with competing products.

49. Also in France, the two chambers of Parliament have passed slightly different versions of a bill that would force Apple to stop making music files purchased on its Music Store incompatible with Digital Music Players other than the Apple iPod.

COMPLAINT

50.    Also in France, the nation's Parliament has approved a law that specifically was designed to force Apple to allow other companies to sell protected music files on the iPod, and to force Apple to make music purchased on its Music Store compatible with competing Digital Music Players.  In an interview, a French official explained that his government believes that "[s]omeone who buys a song has to be able to listen to it, no matter which device or the software of choice" and that Apple's designing its products to prevent consumers from using other companies' products is "not in the interest of the consumer, nor the interest of the creator.  It only benefits the company and we're there to defend the consumer, our citizens."  Apple has unsuccessfully lobbied against the law, calling it "state sponsored piracy."

51.    Denmark's Minister of Culture plans on introducing in 2007 legislation similar to the French law.

52.    The Office of the Norwegian Consumer Ombudsman on July 6, 2006 ruled that Apple violates Norwegian law by tying purchases of music from its Music Store to the purchase of an Apple iPod. Using language that echoes the American common law standard of an unconscionable contract, Ombudsman Bjørn Erik Thon ruled:

> [Apple] goes to great lengths to ensure that its standard customer contract protects the company's own interest. . . .  "The contracts are both vague and hard to understand for the customers, and they're clearly unbalanced to disfavor the customer. The consumers are clearly the inferior partner in the contract, and this in itself is illegal . . . ." [¶¶] "[Apple's restrictive] technology renders the customers without rights in dealing with a company which on a whim can dictate what kind of access customers will have to products they have already paid for . . . ."

53.    Sweden and Denmark's antitrust regulators have indicated that they are likely to duplicate any action taken against Apple by Norway.  The *Financial Times* of London reported on June 14, 2006 that Finnish antitrust authorities are considering joining these three countries in their joint action against Apple.

### ANTITRUST INJURY TO CONSUMERS

54.    Through the unlawful acts and practices described above, Apple has harmed competition, consumers and innovation by causing consumers to pay supracompetitive prices for iPod Digital Music Players.  Those practices, described herein, have also allowed Apple to obtain and maintain illegal monopolies in the aforementioned markets.

55.    By preventing consumers who have purchased music files from Music Store from playing their music on its competitors' Digital Music Players, Apple has been able to charge purchasers of the iPod Digital Music Player a supracompetitive price.

56.    Likewise, by preventing owners of iPods from buying music from any Online Music retailer other than Music Store, Apple deters consumers from even considering doing business with its competitors' music and video stores, allowing it to monopolize these markets.

57.    Consumers have been further injured as innovative companies such as Dell, Olympus, and Rio have begun to withdraw from the Digital Music Player markets. These companies had little choice but to give up and exit the market because Apple's anticompetitive conduct excluded them from reaching the majority of their potential customers, no matter how much cheaper or how much better their products were. There can be no real competition in the Online Music, Online Video, and Digital Music Player markets as long as Apple's conduct forecloses even the possibility of its competitors reaching most potential customers.

58.    This anti-competitive conduct has deterred the development of competing products, damaging consumers by depriving them of a choice of products with different and possibly superior sets of features.

59.    Normally markets for consumer electronic goods such as Digital Music Players are characterized by intense competition and narrow profit margins. Apple's pricing in the Digital Music Player market, by contrast, is exactly that of a monopolist, excessive and arbitrary. For example, the only difference between Apple 1GB and 4GB models of its iPod Nano is the capacity of their NAND flash memory parts. At current spot prices in the NAND flash memory market the 1GB part costs approximately $4.15, while the 4GB part costs approximately $9.67. Nonetheless, Apple charges an additional one hundred dollars for the 4GB model.

60.    Plaintiff and the Classes have been injured by this anti-competitive conduct and will continue to suffer injury unless the relief prayed for herein is granted.

# COUNT I: TYING

## (For Violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1)

### Violations Resulting from Unlawful Tying or Bundling of Online Video and FairPlay Protected Music Files to the Apple iPod

61.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

62.     Apple has substantial market power in each of the distinct Digital Music Player, Online Music, and Online Video markets.

63.     All of these markets are for goods and not services.

64.     There is no appropriate or legitimate business justification for Apple's use of technological restrictions to force those who purchase Apple's Digital Music Players to also purchase only Online Music and Online Video from Music Store that would counterbalance the clear anti-competitive effects of its tying conduct, including the foreclosure of competition in the Online Music and Online Video.

65.     This unlawful conduct has harmed competition in that market and has caused injury to every person who has purchased Online Music and Online Video from Music Store.  The supply and selection of products available is lower than it would be in a competitive market; and the number and effectiveness of competitors have been diminished by unlawful means.

66.     The anti-competitive conduct described herein has damaged Plaintiff and the alleged Classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. §1.

### Violations Resulting from Unlawful Tying of the Apple iPod to Online Video and FairPlay Protected Music Files

67.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

68.     Apple has substantial market power in each of the distinct Digital Music Player, Online Music, and Online Video markets.

69.     All of these markets are for goods and not services.

70.     There is no appropriate or legitimate business justification for Apple's use of technological restrictions to force those who purchase Online Music and Online Video from Music

1   Store to also purchase only Apple's Digital Music Players that would counterbalance the clear

2   anticompetitive effects of its tying conduct, including the foreclosure of competition in the Digital

3   Music Player market.

4       71.    This unlawful conduct has harmed competition in that market, and has caused injury

5   to every buyer of an Apple iPod.  Prices in the Digital Music Player market are higher than they

6   would have been in a competitive market; the supply and selection of products available is lower

7   than it would be in a competitive market; and the number and effectiveness of competitors have been

8   diminished by unlawful means.

9       72.    The anti-competitive conduct described herein has damaged Plaintiff and the alleged

10   classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. §1.

11   **COUNT II: MONOPOLIZATION**

12   **(For Violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. §2)**

13   **Violations Resulting from the Unlawful Acquisition or Maintenance**
**of Monopoly Power in the Digital Music Player Market**

14

15       73.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth

above on behalf of the Classes.

16

17       74.    Through the actions described herein, Apple has willfully acquired and maintained

18   monopoly power in the Digital Music Player market.  This conduct has harmed competition in that

market, and has caused injury to every buyer of an Apple iPod.  Prices in the Digital Music Player

19   market are higher than they would be in a competitive market; the supply and selection of products

20   available is lower than it would be in a competitive market; and the number and effectiveness of

21   competitors have been diminished by unlawful means.

22

23       75.    There is no appropriate or legitimate business justification for the actions and conduct

which have facilitated Apple's monopolization of the Digital Music Player market.

24

25       76.    The anti-competitive conduct described herein has damaged Plaintiff and the alleged

Classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. §2.

26

27

28

COMPLAINT

## COUNT III: ATTEMPTED MONOPOLIZATION

### (For Violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. §2)

**Violations Resulting from the Unlawful Acquisition or
Maintenance of Monopoly Power in the Online Music Market**

77.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

78.    Through the actions described herein, Apple has willfully acquired and maintained monopoly power in the Online Music market. This conduct has harmed competition in that market, making the supply and selection of products available lower in the Online Music market than they would be in a competitive market. The number and effectiveness of competitors have also been diminished by Apple's unlawful conduct.

79.    There is no appropriate or legitimate business justification for the actions and conduct which have facilitated Apple's monopolization of the Online Music market.

80.    The anti-competitive conduct described herein has damaged Plaintiff and the alleged classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. §2.

**Violations Resulting from the Unlawful Acquisition
or Maintenance of Monopoly Power in the Online Video Market**

81.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

82.    Through the actions described herein, Apple has willfully acquired and maintained monopoly power in the Online Video market. This conduct has harmed competition in that market, making the supply and selection of products available lower and making prices higher than they would be in a competitive market. The number and effectiveness of competitors have also been diminished by Apple's conduct.

83.    There is no appropriate or legitimate business justification for the actions and conduct which have facilitated Apple's monopolization of the Online Video market.

84.    The anti-competitive conduct described herein has damaged Plaintiff and the alleged classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. § 2.

**Violations Resulting from Unlawful Attempted
Monopolization of the Digital Music Player Market**

85.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

86.    Apple has acted with specific intent to monopolize the Digital Music Player market.

87.    There was and is a dangerous possibility that Apple will succeed in its attempt to monopolize the Digital Music Player market because Apple controls a large percentage of that market and has the ability and actually does exclude its competitors through use of anticompetitive technological restrictions on its products.  Further success in excluding competitors from the Digital Music Player market will allow Apple to obtain an illegal monopoly over the Digital Music Player market.

88.    This conduct has harmed competition in that market, making the supply and selection of products available lower than it would be in a competitive market.  Apple's unlawful attempted monopolization has also reduced the number and effectiveness of competitors in the Digital Music Player market and forced consumers to pay higher prices in the Digital Music Player market than they would in a competitive market.

89.    There is no appropriate or legitimate business justification for the actions and conduct which have facilitated Apple's attempted monopolization of the Digital Music Player market.

90.    The anti-competitive conduct described herein has damaged Plaintiff and the alleged classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. § 2.

**Violations resulting from the Unlawful Attempted
Monopolization of the Online Music Market**

91.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

92.    Apple has acted with specific intent to monopolize the Online Music market.

93.    There was and is a dangerous possibility that Apple will succeed in its attempt to monopolize the Online Music market because Apple controls a large percentage of that market and has the ability and actually does exclude its competitors through use of anticompetitive technological

1    restrictions on its products.  Further success in excluding competitors from the Online Music market

2    will allow Apple to obtain an illegal monopoly over the Online Music market.

3        94.    This conduct has harmed competition in that market, making the supply and selection

4    of products available lower than it would be in a competitive market. Apple's unlawful attempted

5    monopolization has also reduced the number and effectiveness of competitors in the Online Music

6    market.

7        95.    There is no appropriate or legitimate business justification for the actions and conduct

8    which have facilitated Apple's attempted monopolization of the Online Music market.

9        96.    The anti-competitive conduct described herein has damaged Plaintiff and the alleged

10    classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. § 2.

11    
12    
<b>Violations Resulting from the Unlawful<br>Attempted Monopolization of the Online Video Market</b>

13        97.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth

14    above on behalf of the Classes.

15        98.    Apple has acted with specific intent to monopolize the Online Video market.

16        99.    There was and is a dangerous possibility that Apple will succeed in its attempt to

17    monopolize the Online Video market because Apple controls a large percentage of that market and

18    has the ability and actually does exclude its competitors through use of anticompetitive technological

19    restrictions on its products.  Further success in excluding competitors from the Online Video market

20    will allow Apple to obtain an illegal monopoly over the Online Video market.

21        100.    This conduct has harmed competition in that market, making prices higher and the

22    supply and selection of products available lower than they would be in a competitive market.

23        101.    This conduct has harmed competition in that market, making the supply and selection

24    of products available lower and making prices higher than they would be in a competitive market.

25    Apple's unlawful attempted monopolization has also reduced the number and effectiveness of

26    competitors in the Online Video market.

27        102.    There is no appropriate or legitimate business justification for the actions and conduct

28    which have facilitated Apple's attempted monopolization of the Online Video market.

103.   The anti-competitive conduct described herein has damaged Plaintiff and the alleged classes and is in violation of the Sherman Antitrust Act, 15 U.S.C. §2.

COUNT IV

**(For Violation of the Cartwright Act, Cal. Bus. & Prof. Code § 16270 *et seq.*)**

104.   Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

105.   Apple's actions as described above constituted an unreasonable restraint of trade or commerce throughout California and the rest of the United States in violation of the Cartwright Act, § 16270 *et seq.* of the California Business and Professions Code.

106.   The Classes have been injured in their business and property as a result of Apple's illegal conduct, for which they seek damages (trebled where appropriate) including pre-judgment interest.

107.   Apple's conduct is continuing and unless equitable relief is granted, artificially inflated prices for Portable Music Players and Online Video will continue unabated.

COUNT V

**(For Violation of California Unfair Competition Law,<br>Cal. Bus. & Prof. Code § 17200 *et seq.*)**

108.   Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

109.   The conduct alleged in this complaint constitutes unlawful, unfair, and fraudulent business acts and practices within the meaning of the California Unfair Competition Law, § 17200 *et seq.* of the California Business and Professions Code. Plaintiff and the Classes have suffered injury in fact and lost money or property as a result of Apple's violations of law and wrongful conduct.

110.   Apple's actions are unlawful and unfair because it has violated, *inter alia*, the Sherman Antitrust Act, the Cartwright Act, the Consumers Legal Remedies Act and because it has monopolized the markets for Online Music, Online Video, and Portable Music Players in violation of California common law.

111.    Apple's actions are unfair because in its pursuit of monopoly pricing it has made its products less useful to consumers and prevented them from choosing which companies to do business within the relevant markets based on the merits of each company's products. Moreover, there is no legitimate business justification for Apple's conduct, and any business justification is further outweighed by the harm Apple's conduct has caused to consumers and competitors.

112.    Apple's actions are fraudulent and unfair because it does not inform the purchasers of its products that it has deliberately made them incompatible with the products of its competitors. Apple has deceived consumers who reasonably believed they could purchase Online Music and Online Video from any store to play on Apple's Portable Music Player products, and likewise that the Online Video and Online Music they purchase from Music Store are compatible with any standard Portable Music Player. This belief is reasonable under the circumstances given that consumers when purchasing media products are accustomed to the fact that the CDs, DVDs, audio cassettes, and VHS cassettes they purchase from any American store are compatible with any standard CD, DVD, audio cassette, and VHS cassette player.

113.    Accordingly, Apple has violated the Unfair Competition Law proscription against engaging in unlawful, unfair, and fraudulent business practices.

114.    As a result of this unlawful, unfair, and fraudulent conduct, Apple has been unjustly enriched at the expense of Plaintiff, other members of the Classes, and the general public.

115.    Apple's conduct is continuing and unless equitable relief is granted, artificially inflated prices for Portable Music Players and Online Video will continue unabated.

**COUNT VI**

**(For Violation of the Consumer Legal Remedies Act,
Cal. Civil Code §1750 *et seq.*)**

116.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above on behalf of the Classes.

117.    Plaintiff and each member of the Class are "consumers" within the meaning of Consumer Legal Remedies Act, California Civil Code § 1761(d).

1    118.    The Consumer Legal Remedies Act applies to Apple's actions and conduct, described

2    herein, because it extends to transactions that are intended to result, or which have resulted, in the

3    sale or lease of goods or services to consumers.

4    119.    Defendant violated and continues to violate the deceptive practices proscribed by Cal.

5    Civ. Code § 1770(a)(19) by "Inserting an unconscionable provision in the contract."

6    120.    Apple is a monopolist with market shares of 75% or more in each of the relevant

7    markets and a stock market capitalization of more than fifty billion dollars.   The unnecessary

8    technological restrictions it places on its products offer no benefit to consumers while preventing

9    them from using any Apple product they have already bought from being used with a competitor's

10   digital music player or online store.

11   121.    Apple's size, completely dominant market share, and unreasonable and unfair

12   technological restrictions, place it in a greatly unequal bargaining position relative to consumers in

13   each of the relevant markets.

14   122.    Apple unconscionably exploits this unequal bargaining power by imposing prices,

15   contractual terms, and one sided technological restrictions into contracts with consumers in the

16   digital music markets.   This behavior has violated and continues to violate the Consumers Legal

17   Remedies Act, California Civil Code § 1750 *et seq.*

18   123.    Pursuant to § 1782 of the CLRA, Plaintiffs have notified Defendant in writing of the

19   particular violations of § 1770 of the CLRA and demanded Defendant rectify the actions described

20   above by providing complete monetary relief, agreeing to be bound by its legal obligations and give

21   notice to all affected customers of its intent to do so.   Plaintiffs sent this notice by certified mail,

22   return receipt requested, to Apple's principal place of business.

23   124.    If Apple fails to rectify or agree to rectify the problems associated with the actions

24   detailed above and give notice to all affected consumers within 30 days of the date of written notice,

25   pursuant to § 1782 of the CLRA, Plaintiffs will amend their Complaint to seek actual, punitive and

26   statutory damages and all other relief available to Plaintiffs and the Class under Cal. Civ. Code §

27   1780.

28

1

## COUNT VII

2

### (For Common Law Monopolization Business Practices)

3      125.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth

4   above on behalf of the Classes.

5      126.    The conduct described in this complaint is in violation of California common law

6   prohibiting monopolization.

7

### PRAYER FOR RELIEF

8      WHEREFORE, Plaintiff Somers, on her own behalf and on behalf of the putative classes

9   prays that the Court declare, adjudge and decree the following:

10      A.    That this action may be maintained as a class action pursuant to Rule 23(b)(2) of the

11   Federal Rules of Civil Procedure with respect to Plaintiff's claims for injunctive relief, and Rule

12   23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages and other

13   monetary relief, and declaring Plaintiff as representatives of the Classes and her counsel as counsel

14   for the Classes;

15      B.    That the conduct alleged herein constitutes unlawful tying, monopolization, and

16   attempted monopolization in violation of Cartwright Act, California common law, and sections 1 and

17   2 of the Sherman Antitrust Act;

18      C.    That the conduct alleged herein is in violation of the California Unfair Competition

19   Law and appropriate injunctive relief be granted pursuant to this law;

20      D.    That the conduct alleged herein is in violation of the Consumer Legal Remedies Act;

21      E.    For an order permanently restraining and enjoining Apple from continuing the unfair

22   and anti-competitive activities alleged herein;

23      F.    That Plaintiff and the Classes are entitled to damages, penalties and other monetary

24   relief provided by applicable law, including treble damages;

25      G.    That Plaintiff and the Classes recover their costs of suit, including reasonable

26   attorneys' fees and pre- and post-judgment interest;

27      H.    For an order requiring full restitution of all funds acquired from Apple's unfair

28   business practices, including disgorgement of revenues and/or profits;

1    I.    Awarding Plaintiff and the Class their expenses and costs of suit, including

2  reasonable attorneys' fees, to the extent provided by law; and

3    J.    That Plaintiff and the Classes are granted such other, further, and different relief as

4  the nature of the case may require or as may be determined to be just, equitable, and proper by this

5  Court.

6                                   **JURY DEMAND**

7      Plaintiff demands a trial by jury on all issues so triable.

8  DATED:  _December 31, 2007                    HAEGGQUIST LAW GROUP

9

10

11                                         ALREEN HAEGGQUIST

12                                 501 West Broadway, Suite A-276
                                   San Diego, CA 92101
13                                 Telephone: 619/955-8218
                                   619/342-7878 (fax)

14                                 LAW OFFICES OF HELEN ZELDES
15                                 HELEN ZELDES
                                   249 S. Highway 101, #370
16                                 Solana Beach, CA 92075
                                   Telephone:  858/523-1713
17                                 858/523-1783 (fax)

18                                 MEHRI & SKALET, PLLC
                                   STEVEN A. SKALET
19                                 CRAIG L. BRISKIN
                                   1250 Connecticut Ave. NW, Suite 300
20                                 Washington, DC 20036
                                   Telephone:  202/ 822-5100
21                                 202/822-4997 (fax)
                                   sskalet@findjustice.com
22

23                                 Attorneys for Plaintiff

24
                  **CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**
25
         Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the
26
  named parties, there is no such interest to report.
27

28

     _____
     ALREEN HAEGGQUIST, ATTORNEY OF RECORD FOR PLAINTIFF

  COMPLAINT                                                              - 21 -

1  HAEGGQUIST LAW GROUP
ALREEN HAEGGQUIST (221858)
2  501 West Broadway, Suite A-276
San Diego, CA 92101
3  Telephone: 619/955-8218
619/342-7878 (fax)
4  alreen@haeggquistlaw.com

5

6  LAW OFFICE OF HELEN ZELDES          MEHRI & SKALET, PLLC
HELEN I. ZELDES (220051)             STEVEN A. SKALET
7  249 S. Highway 101, #370              CRAIG BRISKIN
Solana Beach, CA 92075               1250 Connecticut Ave. NW, Suite 300
8  Telephone: 858/523-1713              Washington, DC 20036
858/523-1783 (fax)                   Telephone: 202/ 822-5100
9  helenz@zeldeslaw.com                 202/822-4997 (fax)
sskalet@findjustice.com
10  Attorneys for Plaintiffs

11

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15  STACIE SOMERS, On Behalf of Herself and  )  Case No.
All Others Similarly Situated,           )
16                                           )  CLASS ACTION
                                         )
17                     Plaintiff,            )  AFFADAVIT OF HELEN I. ZELDES
                                         )
18        vs.                                )
                                         )
19                                           )
                                         )
20  APPLE, INC., a California Corporation,   )
                                         )
21                     Defendant.            )
                                         )
22  _____ )

23

24

25       I, HELEN I. ZELDES, declare as follows:

26       1.     I am an attorney duly licensed to practice before all of the courts of the State of

27  California. I am one of counsel of record for plaintiff in the above-entitled action. I have personal

28

1    knowledge of the matters stated herein and, if called upon, I could and would competently testify

2    thereto.

3        2.    The Complaint in this action has been filed in the proper place for the trial on this

4    matter, which is the County of San Jose. Defendant's headquarters are in Santa Clara County, a

5    substantial portion of the acts, events, and omissions giving rise to this action occurred in Santa Clara

6    County, and defendant conducts substantial business there. Assignment to the San Jose Division is

7    proper because Santa Clara County is within the purview of the San Jose Division of the Northern

8    District Court.

9        I declare under penalty of perjury under the laws of the State of California that the foregoing is

10    true and correct. Executed this 31st day of December, 2007, at San Diego, California.

11

12                                    _Helen I. Zeldes_

13                                      HELEN I. ZELDES

14    Subscribed to and sworn before me
      this 31st day of December, 2007.
15

16    _____

17        NOTARY PUBLIC

18    My commission expires on: _____

19

20

21    State of California, County of SAN DIEGO

    Subscribed and sworn to (or affirmed) before me

22    on this 31st day of DEC , 20 07 .

    by HELEN I. ZELDES

23    proved to me on the basis of satisfactory evidence to
      be the person(s) who appeared before me.

24    Signature: _____



OFFICIAL SEAL
FAITH A. GOINS
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1777369
SAN DIEGO COUNTY
MY COMM. EXP. NOV. 1, 2011

25

26

27

28