IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Stacie Somers, | NO. C 07-06507 JW |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND** |
| v. | |
| Apple, Inc., | |
| Defendant. | |

## I. INTRODUCTION

Stacie Somers ("Plaintiff") brings this putative class action against Apple Computer, Inc. ("Defendant"), alleging violations of the Sherman Act, 15 U.S.C. §§ 2, *et seq.*, and violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et. seq.* Plaintiff alleges that Defendant has committed unlawful acts in updating the software of its iPod portable digital music player and online digital music files sold through its iTunes Music Store ("iTMS"), in violation of federal antitrust laws.

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint.[1] The Court conducted a hearing on December 20, 2010. Based on the papers submitted to date and oral argument, the Court GRANTS Defendant's Motion to Dismiss with leave to amend.

---

[1] (hereafter, "Motion," Docket Item No. 104.)

## II. BACKGROUND

**A.  Factual Allegations**

In an Amended Complaint filed on July 9, 2010,[2] Plaintiff alleges as follows:

On or about November 2005, Plaintiff purchased a 20GB iPod from Target, a third-party reseller of Apple's products. (FAC ¶ 12.) Following the iPod purchase, Plaintiff purchased music from iTMS. (Id.) Defendant is an electronics manufacturer and designer incorporated under the laws of California. (Id. ¶ 13.)

In 2001, Defendant introduced the iPod and the iTMS and touted the store's interoperability with a number of portable digital media players. (FAC ¶ 1.) However, in 2003, Defendant released a new iPod and began to restrict the interoperability of the iTMS to only work with its own portable digital media player, the iPod, through the use of embedded proprietary Digital Rights Management ("DRM") file encoding. (Id. ¶¶ 2, 15.) Thus, any consumer who wanted to play music purchased from the iTMS would be required to purchase an iPod and iPod owners were required to purchase their music files from iTMS. (Id.) Restrictions on DRM-embedded music files continue to this day, as owners of the files are still unable to play the files on any other portable digital media player. (Id.) In 2009, Defendant began selling DRM-free music, without restriction as to what type of player it could be played on. (Id. ¶ 4.) However, Defendant required a 30 cent per song fee to convert prior music purchases to DRM-free files. (Id. ¶ 88.)

Further, Defendant intentionally maintained its monopoly status through "software updates" to the iPod and iTMS that impaired the iPod's ability to play music purchased from a competitor. (FAC ¶¶ 16, 56.) Some iPods purchased prior to the updates had interoperability features that were diminished by the updates, thereby reducing the value and usefulness of the iPods. (Id. ¶ 56.) For example, on July 26, 2004, RealNetworks, a

---

[2] (hereafter, "FAC," C 05-0037-JW, Docket Item No. 382.) Plaintiff mistakenly filed her First Amended Complaint on the docket for The Apple iPod iTunes Anti-Trust Litigation. Plaintiff shall ensure that any future filings be filed in her case, C 07-06507.

1  competing online digital music seller, announced that songs purchased through its store
2  could be played on the iPod. (Id. ¶ 65.) In response, on July 29, 2004, Defendant issued a
3  public statement to RealNetworks: "We strongly caution Real and their customers that when
4  we update our iPod software from time to time it is highly likely that Real's Harmony
5  technology will cease to work with current and future iPods." (Id. ¶ 71.) Beginning in
6  October 2004, Defendant did update its iPod software to prevent RealNetwork's songs from
7  being interoperable with the iPod. (Id. ¶ 72.)
8      On the basis of the allegations outlined above, Plaintiff alleges six causes of action: (1)
9  Monopolization (Injunctive Relief and Restitution) in violation of the Sherman Antitrust Act, 15
10 U.S.C. § 2; (2) Attempted Monopolization in violation of the Sherman Antitrust Act, 15 U.S.C. § 2;
11 (3) Monopolization (Damages) in violation of the Sherman Antitrust Act, 15 U.S.C. § 2; (4)
12 Monopolization (Damages and Injunctive Relief) in violation of the Sherman Antitrust Act, 15
13 U.S.C. § 2; (5) Unlawful and Unfair Business Practices in violation of California Unfair
14 Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*; and (6) Unlawful and Unfair Business
15 Practices in violation of California Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*

**B.**  **Procedural History**

On December 31, 2007, Plaintiff filed her Complaint in the present action on behalf of a class of indirect purchasers of Apple products ("Indirect Purchaser Action").[3] On February 15, 2008, the Court related the Indirect Purchaser Action to an action that made identical factual allegations and asserted the same causes of action against Defendant filed on behalf of direct purchasers of Apple products, The Apple iPod iTunes Antitrust Litigation, No. C 05-00037 JW ("Direct Purchaser Action"). (See Docket Item No. 12.) On February 23, 2009, Plaintiff in the Indirect Purchaser Action filed a Motion for Class Certification and Appointment of Co-Lead Class Counsel. (See Docket Item No. 39.) On July 17, 2009, the Court denied the Indirect Plaintiff's

---

[3] (Complaint for Violations of Sherman Antitrust Act, Cartwright Act, California Unfair Competition Law, Consumer Legal Remedies Act and Monopolization of Business Practices, Docket Item No. 1.)

1 Motion for Class Certification as to the damages class under Fed. R. Civ. P. 23(b)(3), as Plaintiff
2 failed to satisfy her burden to establish a reliable measure for damages in an action on behalf of
3 indirect purchasers. (See Docket Item No. 80 at 12-13.) The Court declined to rule on class
4 certification for the Rule 23(b)(2) class for injunctive relief. (Id.) On August 31, 2009, Indirect
5 Purchaser Plaintiff again moved for class certification for the injunctive relief class, also seeking to
6 expand her initial class definition to include "all purchasers of audio or video files from the iTMS
7 since December 31, 2003." (See Docket Item No. 83 at 1.)

8 On October 3, 2009, the Court granted Direct Purchaser Action Defendant's Motion for
9 Judgment on the Pleadings as to Plaintiffs' Rule of Reason Tying Claim under 15 U.S.C. § 1 and all
10 related state claims in the Direct Purchaser Action on the ground that allegations of "a technological
11 interrelationship between iTunes and iPods" failed to meet the threshold pleading requirement of a
12 "coercive tying relationship."[4] In light of the dismissal of all tying claims, on December 21, 2009,
13 the Court *sua sponte* decertified the Direct Purchaser Action Rule 23(b)(2) and 23(b)(3) classes
14 based on allegations of violation of 15 U.S.C. § 2, and the Court granted Direct Purchaser Plaintiffs
15 leave to amend their Complaint to include claims that did "not depend upon allegations of tying as
16 the anticompetitive conduct upon which they base their monopoly claims." Further, the Court
17 invited the Direct Purchaser Plaintiffs to merge the injunctive relief requested in the Indirect
18 Purchaser Action into their prayer for relief "because they derive from the same alleged
19 anticompetitive conduct by Apple."[5] Also in its December 21 Order, the Court ordered Indirect
20 Purchaser Plaintiff to show cause why the Indirect Purchaser Action should not be dismissed "since
21 the basis for a separate action, namely, indirect purchasers of iPods, is no longer viable in light of
22 the Court's denial of certification of the damages class." (Id. at 11.) Further, once the Direct

---

[4] (Order Granting Defendant's Motion for Judgment on the Pleadings as to the First Cause of Action for Violations of Section 1 of the Sherman Act and the Fifth Cause of Action for Violations of the Cartwright Act at 10, hereafter, "October 30 Order," C 05-0037-JW, Docket Item No. 274.)

[5] (Order Decertifying Classes Without Prejudice to Being Renewed; Inviting Further Motions at 2-3, 11, hereafter, "December 21 Order," C 05-0037-JW, Docket Item No. 303.)

4

1 Purchaser Action amended their pleadings to include the injunctive relief sought by the Indirect
2 Purchaser Action, it appeared to the Court that the Indirect Purchaser Action would no longer be
3 necessary. (Id. at 11-12.)

4 On February 1, 2010, the Indirect Purchaser Plaintiff filed her response to the Court's Order
5 to Show Cause. (See Docket Item No. 91.) On June 29, 2010, following a review of the Direct
6 Purchaser Action's Amended Consolidated Complaint, the Court held that the remedies and class
7 represented by the Indirect Purchaser Action were distinct from the Direct Purchaser Action.[6] For
8 instance, the Court found that the Direct Purchaser Action did not purport to represent purchasers of
9 digital files from the iTMS and the Indirect Purchaser Action sought solely injunctive relief. (Id. at
10 16.) Despite the Court's December 21 Order inviting the Direct Purchaser Action to amend their
11 pleadings to incorporate the injunctive relief sought by the Indirect Purchaser Action, the Direct
12 Purchaser Plaintiffs declined to so amend. (Id.) Thus, as the two Actions sought to represent two
13 distinct classes of Apple consumers and did not pray for the same remedies, the Court found the
14 Indirect Purchaser Action "not redundant or unnecessary at this time." (Id.) In light of the Court's
15 allowing the Indirect Purchaser Action the right to proceed, the Court further granted Indirect
16 Purchaser Plaintiff leave to "file an Amended Complaint that does not depend on allegations of tying
17 as the anticompetitive conduct upon which [she] basis [her] monopolization claims." (Id.)

18 Additionally, in the June 29 Order, the Court denied Defendant's Motion to Dismiss the
19 Direct Purchaser Plaintiffs' Sherman Act Section 2 claim, as the Direct Purchaser Plaintiffs had
20 alleged sufficient facts to state a claim for monopolization. (June 29 Order at 5-7.) Specifically, the
21 Court held that the Direct Purchaser Plaintiffs satisfied the second element required to state a claim
22 for monopolization by alleging that "Defendant used software updates to maintain its monopolies in
23 both the digital media and portable media player markets by preventing competing online music

---

[6] (Order Granting in Part and Denying in Part Defendant's Motion to Dismiss; Denying as Premature Defendant's Motion for Summary Judgment; Granting Indirect Purchaser Plaintiff Leave to File an Amended Complaint at 15-16, hereafter, "June 29 Order," Docket Item No. 99.)

5

stores from offering customers digital files that could be played on the iPod, and by preventing competing music players from being able to play digital files from the [iTMS]." (Id.)

On July 9, 2010, Indirect Purchaser Plaintiff filed her First Amended Complaint.

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

### III. STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

## IV. DISCUSSION

Defendant moves to dismiss Plaintiff's First Amended Complaint on the grounds that : (1) Plaintiff, as an indirect purchaser, is barred from seeking monetary recovery for a diminished iPod value theory; (2) impairing iPod value is not an injury to competition; (3) Plaintiff failed to plead facts alleging antitrust injury for her diminution of iPod value theory; (4) Plaintiff's DRM-free overcharge theory fails to state a valid claim for relief; (5) Plaintiff lacks standing to bring a claim for DRM-free overcharge, as she fails to allege that she purchased DRM-free music; (6) claims for an injunction to provide DRM-free music as a replacement for purchased DRM music are based on tying theories previously dismissed by the Court; and (7) Plaintiff's iTMS supracompetitive price theory is contradictory and threadbare. (Motion at 7-15.) Plaintiff responds that dismissal is improper as: (1) Plaintiff pleads antitrust injury for diminution in iPod value, since the software updates continued following her iPod purchase; (2) diminution in value is a valid antitrust theory; (3) Plaintiff is not an indirect purchaser insofar as the diminished iPod value theory, thus the restrictions on damages for indirect purchasers do not apply; (4) Plaintiff's claims for iTMS supracompetitive prices are not contradictory to other allegations in the Complaint and Defendant cannot rely on contradictory extrinsic evidence in a Motion to Dismiss.[7] The Court addresses each theory in turn.

### A. **Diminution of iPod Value**

Defendant moves to dismiss Plaintiff's claims for compensatory damages for diminution of iPod value on the ground that Plaintiff, as an indirect purchaser, is barred from monetary recovery under Illinois Brick.[8] (Motion at 12.) Plaintiff responds that Illinois Brick is inapplicable in the

---

[7] (Opposition to Defendant's Motion to Dismiss Amended Complaint at 12-17, hereafter, "Opp'n," Docket Item No. 106.) It is notable that in her Opposition Plaintiff does not oppose Defendant's contentions that: (1) Plaintiff failed to allege that she was injured by any DRM-free overcharge by purchasing DRM-free music or was herself restricted from the purchase of another music player by DRM; (2) Plaintiff's DRM-free overcharge theory fails to state a cognizable theory of antitrust injury to competition; and (3) Plaintiff's DRM-free overcharge theory is based on monopolization claims connected to tying theories already dismissed by the Court's prior rulings.

[8] Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977).

7

1 present case, insofar as Plaintiff is in a direct purchaser relationship with Apple with respect to the
2 software updates. (Opp'n at 16.)

3 It is well established that indirect purchasers may not recover for violations of federal antitrust law. Illinois Brick, 431 U.S. at 720. In Illinois Brick, the Supreme Court held that purchasers of concrete blocks from retailers could not bring an antitrust action against the concrete block manufacturers for damages, reasoning "that the antitrust laws will be more effectively enforced by concentrating the full recovery for the overcharge in the direct purchasers rather than by allowing every plaintiff potentially affected by the overcharge to sue only for the amount it could show was absorbed by it." Id. at 735. The Court held that indirect purchaser actions for antitrust violations were problematic on two grounds. Id. at 730-33. First, indirect purchaser actions would present a serious risk of duplicative recovery against a defendant, as both indirect and direct purchasers could bring actions based on the same conduct. Id. at 730-32. Second, the complexity of calculating damages in indirect purchaser actions, inevitably requiring the determination of what overcharge, if any, a retailer "passed-on" to the indirect purchaser, proved too indefinite to allow for efficient enforcement of the antitrust laws. Id. at 731-33.

Here, in support of her claim for compensatory damages, Plaintiff alleges as follows:

> [T]hrough affirmative and covert acts to limit the interoperability of the iPod, Apple has impaired the uses, usefulness and value of the iPods purchased by Indirect Purchasers, without the purchaser's consent. As a result, iPods were less valuable to Plaintiff and the Class, because they were unable to download music tracks that would have been available from competitors at lower prices. (FAC ¶ 101.)

Although Plaintiff frames her theory of antitrust injury as to the post-purchase reduction in value of her iPod, in fact, Plaintiff's theory of reduction in value is merely another means of alleging initial overcharge. Insofar as a consumer purchases an item that later suffers from a reduction in value due to a defendant's alleged anticompetitive conduct, the antitrust harm is that the consumer was initially overcharged for the item that they purchased. A "reduction in value" could not occur had a consumer initially paid a supracompetitive price. Thus, the Court finds that Plaintiff remains an indirect purchaser in regards to her diminution in value theory.

Further, Plaintiff's reliance on the contention that she was a direct purchaser as to the software updates is misplaced. Plaintiff's theory of injury is based on the reduction in value of her iPod following purchase, a product that was valued by the initial purchase price from a third-party retailer and not by any subjective value of the user. Moreover, nowhere does Plaintiff allege that the software updates provided by Defendant are "purchased" by Plaintiff. Rather, Plaintiff admits that the software updates are free and automatically downloaded to her iPod. (Opp'n at 16.) Thus, the Court finds that Plaintiff's claims for damages are asserted as an indirect purchaser and, therefore, Illinois Brick bars recovery.

Accordingly, the Court grants Defendant's Motion to Dismiss as to Plaintiff's federal antitrust claims for damages arising from any diminution in iPod value.[9]

**B.  DRM-Free Music Charge**

Defendant moves to dismiss Plaintiff's claims for antitrust violations on the theory of DRM-free overcharge on the grounds that: (1) Plaintiff has not alleged facts that she has standing to bring the present action by purchasing DRM-free music; and (2) Plaintiff fails to allege anticompetitive conduct, that has not been dismissed by the Court's prior Orders, to support a theory of monopolization resulting in the DRM-free 30 cent charge. (Motion at 13-15.) Plaintiff responds that the DRM-free charge theory does comport with the Court's prior rulings in that Defendant's anti-competitive conduct is the refusal to remove the DRM long after the restriction was necessary. (Opp'n at 7.) Plaintiff does not oppose Defendant's contention that she has failed to plead sufficient facts to have standing to bring an action for overcharge.

To state a claim for monopolization, a plaintiff must allege that: (1) the defendant possesses monopoly power in the relevant market; (2) the defendant has willfully acquired or maintained that power; and (3) the defendant's conduct has caused antitrust injury. Cost Mgmt. Servs. v. Washington Natural Gas, 99 F.3d 937, 949 (9th Cir. 1996); Foremost Pro Color, Inc. v. Eastman Kodak Co., 703 F.2d 534, 543 (9th Cir. 1983).

---

[9] As the Court has dismissed Plaintiff's claims for diminution of iPod value, the Court need not reach Defendant's other grounds for dismissal of these claims.

9

Here, in support of the DRM-free overcharge claim, Plaintiff alleges the following:

> In January 2009, Apple announced that it would begin selling most Audio Downloads through [iTMS] without [DRM] restrictions. Purchasers that preciously bought Audio Downloads from [iTMS] in the past could upgrade their files to a [DRM-free] format, but only by paying 30 cents per file, or 30 percent of the original album price. By the end of March 2009, all Audio Downloads sold through [iTMS] were [DRM-free]. (FAC ¶ 88.)
> Defendant's maintenance of [DRM] protection on billions of [iTMS] downloads, even while it now sells the same tracks without such protection, continues to restrict consumer choice and free competition. Customers are now faced with the choice of paying substantial amounts of money, in the hundreds and even thousands of dollars, to "free" their libraries, or purchase an Apple product to play their purchases. (FAC ¶ 96.)

In the Court's December 21 Order, the Court held that to satisfy the second prong of Cost Mgmt. Servs.,[10] Plaintiff must "allege facts showing that [Defendant] engaged in anticompetitive conduct with the specific intent to control prices or destroy competition, beyond the technological interoperability of iPods and media sold through the [iTMS]." (June 29 Order at 5.) In upholding the Direct Purchaser Plaintiffs' Sherman Act Section 2 claim, the Court based its decision on the fact that "Plaintiffs rely on allegations of [Defendant's] conduct directed at preventing interoperability with competing products rather than merely maximizing interoperability between its own products." (Id. at 6.) In particular, the Court found Direct Purchaser Plaintiffs had sufficiently alleged "that Defendant used software updates to maintain its monopolies in both the digital media and portable media player markets by preventing competing online music stores from offering customers digital files that could be played on the iPod, and by preventing competing music players from being able to play digital files purchased from the [iTMS]." (Id.)

While Indirect Purchaser Plaintiff has amended her Complaint to include the software update theory as the anticompetitive conduct on which she bases her monopolization claims, the Court finds that Plaintiff has failed to allege sufficient facts that the 30 cent charge for DRM-free music resulted from Defendant's alleged anticompetitive software updates. In fact, Plaintiff alleges that, at the time Defendant began to charge for DRM-free music, Defendant's market share was on the decline. (FAC ¶ 89.) Rather than allege that the 30 cent charge resulted from Defendant's exclusion of competitors through software updates, Plaintiff's First Amended Complaint alleges that Defendant's

---

[10] 99 F.3d at 949.

10

1  mere maintenance of DRM on the iTMS was the basis for the charge. (Id. ¶ 88.) In its December 21

2  Order, the Court held that mere maintenance of DRM was insufficient to support a monopoly claim:

> As it presently stands, the monopoly claims interweave allegations that there were technological ties between Apple products when they were first introduced to the market (which, without more, is not anticompetitive conduct) and allegations that Apple made technological modifications to its products for the express purpose of maintaining monopoly power (which could support a monopoly claim).

(December 21 Order at 2.) Instead, to state a claim for monopolization, the Court held that Plaintiff must allege that Defendant undertook intentional technological modifications, after establishing monopoly power, in order to maintain its monopoly through the exclusion of competitors.

As the allegations in both the Direct and Indirect Actions were virtually identical, in its June 29 Order, the Court also granted Indirect Purchaser Plaintiff leave to amend her Complaint to include monopolization claims that "did not depend upon allegations of tying as the anticompetitive conduct." (June 29 Order at 16.) The Court finds that Plaintiff's DRM-free overcharge theory fails to state a monopolization claim that is distinct from earlier tying claims already dismissed by the Court in the Direct Purchaser Action.

Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's federal antitrust claims based on an DRM-free overcharge theory.

**C.     iTMS Supracompetitive Price Theory**

Defendant moves to dismiss Plaintiff's claims for antitrust violation on the theory of iTMS supracompetitive pricing on the grounds that: (1) the claims are contradictory to other facts alleged in the First Amended Complaint; and (2) the First Amended Complaint is threadbare and does not allege facts sufficient to support the claim. (Motion at 12-13.) Plaintiff responds that the theory is clear from the face of the well-pleaded Complaint and not contradictory to other alleged facts. (Opp'n at 16-17.)

Here, in support of the iTMS supracompetitive price claim, Plaintiff alleges the following:

> Plaintiff seeks damages resulting from the overchargesAp ple [sic] assessed for [iTMS] downloads resulting from its thwarting of a competitive market. (FAC ¶ 16.)

11

1     Real Networks made clear its intention to offer competition in the market for Audio
2     Downloads that could be played on iPods, pricing its Audio Downloads at a significant
      discount to the prices charged by Apple. Through its unjustified actions, Apple destroyed
3     that competition. (FAC ¶ 133.)
            Plaintiff and the Class were are and customers in the markets that were restrained,
4     and suffered antitrust injury as a result of Defendant's actions, in the form of the higher
      prices they paid for Audio Downloads from Apple than they would have paid in a
5     competitive market. (FAC ¶ 134.)

6 Plaintiff fails to allege facts in support of the allegation that Apple's iTMS pricing was

7 supracompetitive and that the pricing of excluded competitor RealNetworks was competitive.

8 Plaintiff merely states that competitor RealNetworks' pricing for audio downloads was priced lower

9 than Defendant's audio downloads. (Id. ¶¶ 14, 66, 133.) Further, in her Complaint, Plaintiff does

10 not purport to represent a Class of all purchasers of iTMS music who purchased iTMS music at

11 supracompetitive prices, and solely seeks a Class of DRM-restricted music purchasers. (FAC ¶¶ 5,

12 37.) In addition to failing to state facts in support of her claim, Plaintiff alleges in a contradictory

13 fashion that Defendant's pricing has remained at the same price per unit since their entry into the

14 market in 2003, including prior to obtaining monopoly power in the market and after Defendant's

15 market share was on the decline. (Id. ¶¶ 45, 89.) Further, Plaintiff alleges that Defendant

16 purportedly runs iTMS at cost, so it can drive profits through sale of its iPod products. (FAC ¶ 55.)

17 Thus, the Court finds that Plaintiff's claim for antitrust injury based on iTMS fails to plead "enough

18 facts to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570.

19     Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's federal antitrust

20 claims based on iTMS supracompetitive pricing.

21 **D.     State Law Claims**

22     In addition to Plaintiff's four Causes of Action for violation of Section 2 of the Sherman Act,

23 Plaintiff also alleges two Causes of Action for violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

24 (FAC ¶¶ 143-58.) Plaintiff's Fifth and Six Causes of Action respectively for violation of § 17200

25 are based on allegations that Defendant used software updates to exclude competitors and

26 overcharged consumers for DRM-free music in violation of the Sherman Antitrust Act. (Id.)

27

28                                          12

In light of the Court's dismissal of Plaintiff's claims for violation of the Sherman Antitrust Act, the Court finds that Plaintiff's state law claims for violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, now lack sufficient allegations of unfair and unlawful conduct to state a claim.

Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's state law claims.

## V. CONCLUSION

The Court GRANTS Defendant's Motion to Dismiss Plaintiff's Amended Complaint with leave to amend. On or before **January 21, 2011**, Plaintiff shall file her Second Amended Complaint consistent with the terms of this Order. Plaintiff shall allege facts sufficient to support standing to bring her anti-trust claims and shall not reallege any theories that the Court has previously found to be non-competitive.

Dated: December 21, 2010

JAMES WARE
United States District Judge

13

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alreen Haeggquist alreenh@zhlaw.com
Craig Ellsworth Stewart cestewart@jonesday.com
Craig L. Briskin cbriskin@findjustice.com
David Craig Kiernan dkiernan@jonesday.com
Elaine Wallace ewallace@jonesday.com
Helen I. Zeldes helenz@zhlaw.com
Michael Tedder Scott michaelscott@jonesday.com
Robert Allan Mittelstaedt ramittelstaedt@jonesday.com
Steven A. Skalet sskalet@findjustice.com

**Dated: December 21, 2010**                               **Richard W. Wieking, Clerk**

                                                           **By:    /s/ JW Chambers**
                                                                  **Elizabeth Garcia**
                                                                  **Courtroom Deputy**

**United States District Court**
For the Northern District of California